IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JEANNIE M. JONES, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CIV-12-231-SPS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration,[1] ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

The claimant Jeannie M. Jones requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the Commissioner's decision is AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his

---

[1] On February 14, 2013, Carolyn Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on April 15, 1976, and was thirty-three years old at the time of the administrative hearing (Tr. 35). She has a high school education and past relevant work as nurse's aide, parts runner, receptionist, and data entry clerk (Tr. 25, 35). The claimant alleges that she has been unable to work since June 13, 2006 because of bipolar disorder, thyroid disease, and asthma (Tr. 150).

### Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on August 28, 2008. Her applications were denied. ALJ Trace Baldwin conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated September 21, 2010. The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981; 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity ("RFC") to perform a narrowed range of sedentary work, *i. e.*, she could lift/carry at least ten pounds occasionally and ten pounds frequently, and stand/walk/sit for four hours in an eight hour workday, but should avoid exposure to vapors, fumes, dust and temperature extremes. The ALJ also found that the claimant could perform simple tasks with routine supervision and relate superficially to coworkers and supervisors, but could not work with the general public (Tr. 18). The ALJ concluded that although the claimant could not return to any of her past relevant work, she was nevertheless not disabled because there was other work she could perform, *i. e.*, addresser, sorter, and weight tester (Tr. 26).

**Review**

The claimant contends that the ALJ erred: (i) by failing to properly analyze the opinions of her treating physicians, Dr. J. Pat Sullivan, M.D. and Dr. Lauren Meredith, M.D.; (ii) by failing to find that her myofascial trigger point disease was severe at step two; and (iii) by failing to properly analyze her credibility. The Court finds all of these contentions unpersuasive, and the Commissioner's decision must therefore be affirmed.

The record reveals that the claimant frequently received treatment for kidney stones (Tr. 195, 231-232, 235-236). She began receiving treatment from Dr. Sullivan in October 2009 (Tr. 386). At that time, the claimant received trigger point injections and

was given a prescription for Soma (Tr. 380). She continued to receive trigger point injections (Tr. 363). In December 2009, Dr. Sullivan referred the claimant for an MRI of the cervical spine, which had unremarkable results (Tr. 366).

On February 8, 2010, Dr. Sullivan submitted a letter indicating that the claimant had been his patient for three years and experienced severe upper extremity and bilateral shoulder pain (Tr. 405). He noted he had diagnosed her with myofascial trigger point disease, as "[s]he always presents with large, very firm areas of muscular tension" (Tr. 405). Dr. Sullivan described his treatment through trigger point injections and stated that the claimant required the muscle relaxer Soma on a daily basis to deal with her symptoms (Tr. 405). In April 2010, Dr. Sullivan completed a Medical Source Statement – Physical in April 2010. He opined that the claimant could lift/carry ten pounds frequently and twenty pounds occasionally, and stand/walk less than two hours and sit less than six hours in an eight-hour workday (Tr. 406). Dr. Sullivan noted that the claimant needed to lie down to manage pain and that her upper extremity pulling was limited to ten pounds for a maximum of 10 minutes (Tr. 407). He also opined that the claimant was capable of frequently balancing, occasionally kneeling, handling, fingering, and feeling, but never climbing, stooping, crouching, crawling, or reaching (Tr. 407). Dr. Sullivan based these findings on the claimant's diagnosis of severe myofascial trigger point disease bilaterally of the trapezius and rhomboids (Tr. 407).

The claimant received treatment from the Mental Health and Substance Abuse Centers of Southern Oklahoma (MHSCSO) beginning in May 2008 (Tr. 257). In June

2008, the claimant presented for screening and assessment and identified her problem areas as social interaction and withdrawal (Tr. 251). She reported that she was physically and emotionally abused by her first husband, and she had lost custody of her son due to an addiction to pain pills two years prior (Tr. 251, 252). Her problem areas with regard to feeling, mood and affect were noted as mood lability, coping skills, suicidal/homicidal ideation/plan, depression, and change in appetite/sleep patterns as evidenced by the claimant's report of focus problems, mood swings, feelings of hopelessness, and low self-esteem (Tr. 253). The claimant's diagnosis was major depression, recurrent, unspecified and her GAF was 41 (Tr. 255). During an appointment in April 2009, clinician Linda Estes wrote that the claimant was "off balance" and was slurring her words, leading Ms. Estes to become concerned that she was "taking something and not telling [her]" (Tr. 303). At an appointment in July 2009, the claimant was noted to be doing better, but in October 2009, the claimant reported that her depression was getting worse and she was being sent to a rehabilitation center for three months for a positive morphine test (Tr. 288). However, the claimant ultimately did not go to a rehabilitation center because she passed subsequent drug tests (Tr. 277).

      Dr. Meredith, who supervised Ms. Estes during claimant's treatment at MHSCSO, completed a Medical Source Statement – Mental on March 11, 2010. She found that the claimant was moderately limited in the following functional categories: (i) ability to remember locations and work-like procedures; (ii) ability to understand and remember detailed instructions; (iii) ability to carry out detailed instructions; (iv) ability to maintain

attention and concentration for extended periods; (v) ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (vi) ability to sustain an ordinary routine without special supervision; (vii) ability to work in coordination with or proximity to others without being distracted by them; (viii) ability to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (ix) ability to interact appropriately with the general public; (x) ability to accept instructions and respond appropriately to criticism from supervisors; (xi) ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (xii) ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; (xiii) ability to respond appropriately to changes in the work setting; (xiv) ability to be aware of normal hazards and take appropriate precautions; (xv) ability to travel in unfamiliar places or use public transportation; and (xvi) ability to set realistic goals or make plans independently of others (Tr. 416-17).

State agency physician Dr. M. Gerald Ball, Ph.D. evaluated the claimant on November 20, 2008 (Tr. 209). She admitted having an addiction to Lortab but stated that she was in rehabilitation and had been sober for three months (Tr. 209). She related that she has threatened to kill herself, but she told Dr. Ball that she does not mean it and only does it to get her way (Tr. 209). The claimant told Dr. Ball that she has been diagnosed with bipolar disorder, and that she experiences depression that causes her to sit in the

dark one to three days each week (Tr. 209). After conducting his evaluation, Dr. Ball concluded that the claimant was functioning in the low average range of intelligence, and her reading level was sufficient to follow simple to moderately complex written instructions (Tr. 210). Dr. Ball's diagnoses were major depression, recurrent, moderate, opioid dependence, in early full remission, and asthma, and he assessed her GAF to be a 52 (Tr. 210).

State agency physician Dr. Dorothy Millican-Wynn, Ph.D. reviewed the medical records of the claimant and completed a Psychiatric Review Technique form. She found that the claimant had a depressive syndrome characterized by sleep disturbance and decreased energy and opioid dependence in early full remission (Tr. 219, 224). As a result, Dr. Millican-Wynn found that the claimant had mild limitations in her activities of daily living and maintaining concentration, persistence, and pace and moderate limitations in maintaining social functioning (Tr. 226). Dr. Millican-Wynn also completed a Mental Residual Functional Capacity Assessment in which she opined that the claimant was moderately limited in the ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public (Tr. 212-13). Her written comments reveal that she believed that the claimant was capable of understanding, remembering, and carrying out simple and some complex tasks under routine supervision, relating superficially to coworkers and supervisors for work purposes, and adapting to work settings (Tr. 214).

The claimant first contends the ALJ erroneously failed to find that her myofascial trigger point disease was a severe impairment at step two. A claimant has the burden of proof at step two of the sequential analysis to show that she has an impairment severe enough to interfere with the ability to work. *Bowen v. Yuckert*, 482 U.S. 137 (1987). This determination "is based on medical factors alone, and 'does not include consideration of such vocational factors as age, education, and work experience.'" *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004), *quoting Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). Although a claimant "must show more than the mere presence of a condition or ailment[,]" *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997), the claimant's step-two burden only requires a "de minimis" showing of impairment. *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997), *citing Williams*, 844 F.2d at 751. A finding of non-severity may be made only when the medical evidence establishes a slight abnormality or a combination of slight abnormalities which would not have any more than a minimal effect on an individual's ability to work. *Hinkle*, 132 F.3d at 1352. However, "[o]nce the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal." *Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008). In this case, the ALJ found that the claimant suffered from the severe impairments of asthma and depressive disorder. Further, the ALJ mentioned the claimant's myofascial trigger point disease and held that it did not impose any work-related limitations. *Cf. Spicer v. Barnhart*, 64 Fed. Appx. 173, 177

(10th Cir. 2003) (reversing ALJ's decision when he failed to even mention an impairment making it impossible to determine if he formed any conclusion regarding the impairment individually or in combination with other impairments when evaluating the RFC) [unpublished opinion]. Since the ALJ did not conclusively deny benefits at step two, his failure to find that the claimant's myofascial trigger point disease was severe does not constitute reversible error.

The ALJ was nevertheless required to consider the effect of the claimant's non-severe myofascial trigger point disease throughout the sequential analysis. *See Hill*, 289 Fed. Appx. at 292. In this regard, the only evidence of the claimant's myofascial trigger point disease comes from her treating physician Dr. Sullivan. The claimant thus contends that the ALJ failed to properly analyze Dr. Sullivan's opinion describing her limitations resulting from the myofascial trigger point disease. The Court does not agree.

Medical opinions from a treating physician are entitled to controlling weight if they were "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If a treating physician's opinions were not entitled to controlling weight, the ALJ must determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. § 416.927. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors

provided in § [416.927].'"), *quoting Watkins*, 350 F.3d at 1300. Finally, if the ALJ decides to reject a treating physician's opinions entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id*. at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Id*. at 1300 [quotation omitted].

The ALJ did not say what weight he was giving Dr. Sullivan's opinions, but it is clear it was not controlling weight. The ALJ did, however, perform an analysis of the proper weight to give Dr. Sullivan's opinions, noting that: (i) the claimant's MRI of the cervical spine was normal; (ii) the claimant did not complain of shoulder or neck pain at the emergency room in 2009; (iii) the claimant had no musculoskeletal abnormalities upon examination; (iv) the claimant was prescribed exorbitant amounts of Soma despite an addiction to painkillers; and, (v) Dr. Sullivan's prescription of "exorbitant" amounts of Soma may have impacted the claimant's report of complaints (Tr. 22). The references to "exorbitant" amounts of Soma appear speculative on the ALJ's part, *see, e. g., McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) ("In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*."), but the Court is otherwise satisfied that the ALJ provided sufficient reasons for affording Dr. Sullivan's opinion little weight, *i. e.*, the normal examination, MRI findings, and infrequent and conservative treatment. *See Watkins,* 350

F.3d at 1301 ("[I]f the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so."), *citing Miller v. Chater,* 99 F.3d 972, 976 (10th Cir. 1996), *quoting Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987).  The Court therefore finds that the ALJ's analysis of Dr. Sullivan's opinions was not clearly erroneous.

The claimant also contends that the ALJ failed to properly analyze the opinion of her treating physician Dr. Meredith.  The ALJ found that Dr. Meredith's opinion was not supported by or consistent with the medical evidence of record, citing the following: (i) Ms. Estes, the claimant's primary clinician, noted that the claimant was unable to work because of back pain, her participation in inpatient rehabilitation treatment, and court obligations, as she was on supervised probation; (ii) the claimant was never noted to have poor hygiene or inappropriate behavior; (iii) there are no reports that the claimant had problems with cognition, insight, attitude, thought, or memory; and (iv) Ms. Estes found that the claimant's prognosis was good (Tr. 23).  The claimant contends that Dr. Ball's assignment of GAF of 52 supports Dr. Meredith's opinion, but the Court does not agree.  GAF scores "may indicate problems that do not necessarily relate to the ability to hold a job."  *Lopez v. Barnhart*, 78 Fed. Appx. 675, 678 (10th Cir. 2003).  There was nothing in Dr. Ball's findings to indicate that he believed that the claimant could not work; indeed, he reported that the claimant was capable of following simple to moderately complex written instructions (Tr. 210).  Thus, Dr. Ball's "GAF score, standing alone, does not undermine, nor is it 'significantly probative' evidence in opposition to, the ALJ's ultimate conclusions concerning the seriousness of claimant's mental status or ability to

work." *Id.*, 78 Fed. Appx. at 678, *citing Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001).[3]

Finally, the claimant argues that the ALJ failed to properly analyze her credibility. This argument, too, is without merit. A credibility determination is entitled to deference unless the ALJ misread the medical evidence taken as a whole. *Casias v. Secretary of Health & Human Services,* 933 F.2d 799, 801 (10th Cir. 1991). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4.

The ALJ here found that "the claimant's statements at her hearing concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment" (Tr. 19). This Court and others have disapproved such language in the past, as it suggests an improper approach to the process of analyzing the claimant's credibility, *i. e.*, assigning an RFC and measuring credibility against the RFC, rather than evaluating credibility (along with

---

[3] The claimant also argues that the ALJ had a duty to recontact both Dr. Sullivan and Dr. Meredith if he had any questions regarding the basis for their opinions. But the rules imposing such a duty are no longer effective as of March 26, 2012. *See* 20 C.F.R. §§ 404.1512; 416.912. The Court finds no abuse of discretion by the ALJ.

the other evidence in the case) and subsequently formulating an appropriate RFC. *See, e. g., Bjornson v. Astrue,* 671 F.3d 640, 645-46 (7th Cir. 2012) ("[T]he passage implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards. The administrative law judge based his conclusion that Bjornson can do sedentary work on his determination that she was exaggerating the severity of her headaches. Doubts about credibility were thus critical to his assessment of ability to work, yet the boilerplate implies that the determination of credibility is deferred until ability to work is assessed without regard to credibility, even though it often can't be."). *See also McFerran v. Astrue,* 437 Fed. Appx. 634, 637 (10th Cir. 2011) ("The ALJ's ultimate credibility determination is a singularly unhelpful sentence: '[T]he claimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment.' We agree with Mr. McFerran that the ALJ's credibility assessment must be set aside."). But the ALJ did not limit evaluation of the claimant's credibility to the above-mentioned boilerplate language. He went on to note the relevant factors for evaluating a claimant's credibility as to disabling pain set forth in *Luna v. Bowen,* 834 F.2d 161 (10th Cir. 1987), and cited evidence in support of his reasons for finding that the claimant's subjective complaints were not credible. For example, the ALJ mentioned: (i) state agency physician Dr. Jennings found that the claimant had no back or spine abnormalities; (ii) the claimant was inconsistent in her testimony; (iii) the claimant failed to quit smoking despite her asthma; (iv) the claimant exhibited drug-seeking

behavior; (v) the claimant walked and jogged for exercise; and (vi) the claimant's treatment was relatively infrequent and conservative (Tr. 20-25). Thus, the ALJ linked his credibility determination to the evidence as required by *Kepler*, and provided specific reasons for his determination in accordance with *Hardman*. The Court finds that the ALJ's analysis of the claimant's credibility was not clearly erroneous.

## Conclusion

In summary, the Court finds that the ALJ applied correct legal standards, and that the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner is accordingly hereby AFFIRMED.

**DATED** this 30th day of September, 2013.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma